Electronics v. Bizcom Electronics Mr. Toronto, welcome and good morning now that the logistics are completed. I just want to say that without doubt this case is very complex with many patents, many issues, sub-issues, and so forth. We have the extensive briefing of the parties and to amici as well, and in the limited time allowed for argument, I don't see how we can possibly cover more than one or two of the primary issues. I just want to encourage you to be very selective and start with your most important contention. Let me start then with exhaustion. We challenged summary judgment of non-infringement on a that as to four patents, the system claims, the non-method claims that LGE's patents were exhausted. In so finding, the district court did something for which there is, I believe, literally no precedent. It found exhaustion despite what it itself recognized to be an no precedent for that, and we suggest that exhaustion is not and should not be a way around that implied license conclusion. That negation is in principally the intel letters that were sent to all the defendants, and I'm under unfortunately still under the confidentiality order. We're taking steps to try to release some of that material, but it's unfortunately still confidential. Can you elaborate on why the, what you're calling the negation language of the intel license precludes finding exhaustion? I thought you said, maybe misunderstood you, that there would be no license conveyed by intel to its customers at all for anything. Is that what you're saying? For the use of the intel purchased products in combination with non-intel products. That was the specific language at page 77. But the flip side of that would be you, original equipment manufacturer, may, under this license, incorporate intel products with other intel products and perhaps some other parts to come up with a complete computer. Yes, that's correct. So it does convey a license with a restriction perhaps, but it sounds to me like it does convey a license. It doesn't convey, and more, stated more affirmatively, in the district court's words, it disclaims the only license that could possibly be at issue here, which is permission to practice these patents with non-intel components, there being no evidence that intel currently sells any of the combination components. And our point is this, that exhaustion doctrine has always been and should remain subject to requirements, each of which independently should lead to reversal of the district court. The first is the one that was most elaborately explained in the Malintrot decision. A valid condition attached to the first sale defeats exhaustion by that first sale. That's what Malintrot holds in express terms, reciting and discussing all of the Supreme Court decisions leading up to it, and it was reaffirmed in the Brown medical decision. That principle appears, in effect, to have been recognized by the district court in the court's second ruling at 73 to 74, but then misapplied, because the district court said, well, I don't really see, literally in a sentence or two, I don't really see that the purchasers, the defendants here, were under a restriction. And I think that that's both wrong in itself and, more importantly, wrong in defining the inquiry. What we're talking about here is the Section 154 exclusivity right and a patentee's ability, absent some other illegality, to parcel out that exclusivity right in pieces. When there is an explicit notice by the seller here, by Intel, to the defendants, we are not giving you, you do not have from LGE, permission to do exactly what you're now accused of doing, to combine. And they haven't gotten that right. Let me make sure that I understand the scope of the patents and the technology and how it fits in with the license to Intel. I gather, after one works one's way through all of this, that Intel itself, then, is not practicing any of the patents. It's not operating under any of the claims, other than to the extent it might be contributing to or inducing practice of the claimed invention by Intel's customers, those who are now the defendants here. Is that right? That's true for these patents, but this was a global license for a whole assortment of LGE patents, at least one of which, the 108 patent, which we cite at the beginning of our brief, did, in fact, directly cover an Intel product. But that's not an asserted patent. All right, but that's not really relevant to the larger issue here, that the license to Intel, with no explicit field of use license, no explicit withholding of any further use, no explicit designation of what's to be done with the unpatented products that Intel is It leads me to wonder, as you try and understand just what the parties intended when they entered into this agreement, did they... It's inconceivable to me that the precise conflict that's now before us was not foreseen by those who negotiated those licenses. It seems to me to be highly logical that the idea was, well, we'll leave that for the future, let the courts figure it out. So we're trying to figure out just what, indeed, the parties had in mind, that contractual purpose. And this is where I'm stumped. Why does Intel need a license at all unless there was something they could pass on to their customers? First of all, I do think that the extensive series of whereas clauses in the license, which we quote in the brief, could, together with the requirement under the master agreement to send this letter out, really puts beyond dispute that the parties, these two parties, Intel and LGE, understood that Intel was paying a sum of money, and I think it's fair to assume a much smaller sum of money than it otherwise would have been paying, because it was buying something less than the normal, otherwise unconditioned right to sell the product for any use its customers might want to make of it. So what is going on here is that Intel paid for the right to avoid indirect infringement allegations as to these patents, direct infringement allegations as to the 108. There's no mention of indirect infringement, though, is there? I couldn't find anything about contributory infringement. Intel is not here, of course. So the general disclaimer... I'm just looking at the contract. Ah, yes. I'm just looking at the license agreement. I think the license agreement says you have a license to make, sell anything that's covered by our patents subject to, and then there's the section 3.8... But what they were doing was not covered by the patents. It was what their customers was doing that was covered by the patents. Right. I think... I'm sorry. But I think you stated it accurately, and that's where I get stuck. Any LGE or any Intel products, LGE is saying you have a license insofar as basically any of our patents rights are concerned, you have a license from us to go ahead and make your Intel products. It doesn't say whether they would be infringing under 271A, B, C, F, or otherwise. It just says you have a license, and that would be quite broad and convey a general license to Intel to make and sell... Or not at all, because on your position that there were, in fact, non-infringing uses, they wouldn't need any license on any indirect infringement theory, would they? On an indirect infringement, I think... You're saying since they're not direct infringers, but nonetheless they took this valuable license. Right. I think the question of indirect infringement had Intel, in the absence of a license, sold a particular component that had no substantial non-infringing use. But let me tell you what I'm trying to get at is what, in fact, was the intention of the parties in this contract. Now, we know what the district court thought was the intention, and it seems to be extremely logical. But you're saying that it was wrong. Yes, I think that... We find it really quite impossible to say that the intention of Intel and LGE is anything other than reflected in the extensive whereas clauses, plus the notice letter that went to the defendants which said, LGE here is doing everything we can to reserve our right to enforce our patents against your customers. That, I think, could hardly be clearer, and that's why the district court, we think, correctly said no implied license, because you couldn't possibly conclude that LGE was doing anything except withholding permission to the downstream users of whatever Intel was selling. And our fundamental point is that the district court,  incorrectly said there was nevertheless an exhaustion basis for stripping LGE of its patent rights against the downstream users. And that, I think, has never happened before, and as Malintrot says, based on Mitchell against Hawley, is an improper extension of an exhaustion doctrine that always has been and ought to continue to be really integrated with implied license doctrines, so that a valid condition on how much of the 154 exclusivity rights the patentee is giving away means that no more than that is being given away. And at least when that's communicated in the first sale to the purchaser, the purchaser can't say, ah, you don't have any more patent rights. That's our principal point. And that, of course, does not depend on our second reason for saying that the district court was wrong to invoke exhaustion. The second reason is that exhaustion doesn't apply unless the article sold is itself patented. The first point, valid condition applies whether or not we're right about Univis ultimately being, on the point principally in dispute, a license case rather than an exhaustion case, but we also think that that was a second error in the district court. But regardless of whether exhaustion could ever apply to the sale of something that is not itself a patented article, a valid condition limits the exhaustion in just the way the implied license does. Well, there's an explicit clause in the contract which says that nothing here will affect by operation of law the, I don't remember, it didn't say first sale doctrine, but anyway, the exhaustion. Now, again, it looks to me as if the parties either were not able to agree with respect to the rights of the ultimate user and decided to leave it for the courts to figure out. Let me try to say why I think that that's not right. The district court did not, I should say, rely on that savings clause, the last sentence of Section 3.8 of the license. And there's a good reason, I think, why the district court didn't. For one thing, at most that savings clause says exhaustion will apply without regard to restrictions in the license. But the fact is the notice letter that conditioned the first sale wasn't part of the license at all. So even in the most technical, literal reading of that savings clause, it does not eliminate the condition stated in the notice letter, which was provided for in the master agreement, which was not incorporated into the license. The broader point is this. All the savings clause says is exhaustion principles apply as they otherwise would apply. It doesn't say that exhaustion principles suddenly are going to ignore the conditions that the parties went to such elaborate lengths to put into their own agreement, the Intel and LGE agreement. And that, I think, is why the district court didn't point to this savings clause as somehow taking back with one hand exactly what they had given with the other, the giving, of course, being all of these whereas clauses plus the notice letter that said the one thing that LGE is not selling to you, Intel, is the right to let your customers combine your Intel components with other components to practice our patents. That you can do, but only if those downstream customers come to us and get a license. Mr. Taranto, you're down to a minute and 20 seconds of rebuttal. Do you want to save the rest? I think I've got it better. Thank you. Thank you, sir. Mr. Anthony? Yes. May it please the court, and we're aware of the caution on how many issues, and we'll do our best. We would urge upon this court construction of exhaustion that looks to the Constitution in the first place, Article I, Section I, Clause A, because in the Univis case, the Supreme Court looked particularly to that portion of the Constitution and said there's a bundle of rights given to patentees, and that bundle of rights includes making, using, and vending, and the suggestion is that the full extent of that patentee's rights end there. So once there is a vending under operation of the Constitution, the rights are exhausted. So we think exhaustion is- No, but we know that it's not that broad. We know that there is freedom of contract. We know that Univis was an antitrust resale price control case primarily, not a matter of saying that there is an absolute right for everyone to use for every purpose anything that they acquire on the market. So we know that that's not the case. The real question is, isn't it, what fundamentally did the parties agree to? What was the intent of these contracts? And then, if the argument is that despite a contractual intent at restraint, there is some fundamental right under the Constitution or the antitrust laws not to enforce such an agreement, again, malincrom is a kind of field of use restriction agreed to between buyer and seller for, as well as I recall, for reasons of safety and health. Whatever the issues are, what is your interpretation of the intent of the parties in entering into these contracts, as well as the letter from Intel to you as the customers, which looks very much like a warning of watch out for this patentee. They want something from you. Exactly. Your Honor, and I agree with what you're wind up to this question, but let me answer this question, your question, and it's this. What the parties did was intend to restrict the implied license doctrine for combinations with non-Intel components, but to preserve the exhaustion doctrine, a doctrine which both parties, being very sophisticated, were well aware of, and of course Intel being one of the parties, had a material role in many of the exhaustion cases in this country. And so the purpose of this was to say when the sale is unconditional, which is a touchstone of exhaustion, we have exhaustion. If the sale is conditioned, then we're going to have implied license. Intel won the right to sell their products unconditionally. They had an obligation, however, to provide a warning letter. And that is a warning letter saying if you combine our products with anyone else's products, you proceed at your own risk. You could be sued by LGE because our license does not extend to combination with non-Intel products. So what they did is set up the dichotomy you see in the Mallinckrodt case and the HP repeated type case. In HP, there was just a warning. This court held that the statement that these cartridges, if used more than once, may lose quality. If you refill these cartridges, you may void the warranty on the printer we've sold you. Those are warnings. Proceed at your own risk. Mallinckrodt, however, was a condition on sale that said you can use this aerosol spray once and then dispose it. This was being sold one time. So the way to reconcile exhaustion and implied license in the Intel-LG agreement is to say any time Intel would want to do it, they could put a condition on sale. This letter, the warning letter, could have been a condition on sale. All it had to say is by future purchases of products from us, you agree that you will install these products only with Intel components. If that letter said that and therefore it was a conditional contract accepted upon purchase of future Intel products, that would be a condition on the sale, implied license would come into play, and there would be no implied license. So Intel had as its option to either sell these things unconditionally, which they did to every defendant, and there's no dispute here. All these defendants received the Intel products unconditionally, but just with a warning. But do you have to go that far? Or is your position adequately supported if, in fact, the use to which you put the Intel components is the only known use? I know that you debate that at some length in the briefs as well, and I agree that export is not a factor. Is that an answer to these flexibilities that were built into the contract? It is an answer. As I see exhaustion, it requires three things. One is that the sale must be unconditional. Secondly, the part sold, if it's less than the full claim combination, such as in Unibis, such as in Cyrix, the part sold must have essential features of the invention, and that's on the Unibis. And third, it must have no substantial non-infringing uses. And when you meet those three conditions and Intel forces those three conditions on you, then it is exhaustion. There's no way to use the Intel parts, for example, without memory and some other things. So there is no non-infringing use, because as soon as you combine it with memory, supposedly you're infringing these patents, and that is exactly the position taken below by LGE, that all you have to do is take an Intel part and combine it with the components it must be combined with, and you infringe our patents. That is not within the scope of the preclusion of implied license, because we've met the three conditions for exhaustion. Maybe the law hasn't caught up with commerce and the sophistication of actors like Intel. Maybe these tests are too crude, too wooden, too simplistic. Your Honor, I don't think so. I think these are sophisticated parties. They have a very simple way to deal with the exhaustion circumstance. They can always get rid of exhaustion by following this court's instruction in Malacate. It's just put a condition on sale. It's not difficult to do. It could appear in the sales contract itself or in a package label that says, use this product, you agree, or purchase this product, you agree. The industry is well-equipped to do this. In fact, it has been doing this in the case of software. They don't sell software because they don't want a first sale exhaustion. So the industry knows how to avoid first sale exhaustion when they want to, or have it when they want to. Here, Intel got the right, after paying a significant sum of money, got the right to sell unconditionally. They didn't want any exposure. We want to sell unconditionally. It's your problem, LGE, to figure out some theory of infringement, but first sale exhaustion will apply. That's why first sale exhaustion has primacy in the agreement. You have to think that then specifically giving first sale exhaustion primacy in the agreement has real meaning. I don't understand how you fully answered Judge Newman's question as to the intent of the parties. But beyond that, what about the expectations of the customers of Intel who build computers? It seems like any set of tests, any legal regime, should leave all the actors knowing where they stand. Now, you seem to be emphasizing that LG and Intel knew where they stood because they were very sophisticated and they did it in a very deliberate way and so on, as you've argued. But what about all these original equipment manufacturers? Did they think they were protected or not protected? Was it clear to them where they stood? I can speak for the installers who are the defendants here. We let them build this equipment and then sell it to the Dells and HPs and the other computer sellers of the world. They believe that Intel was standing behind their product, as this contract said, and was protecting them. They believe there were circumstances that Intel could impose, if they wished to, to limit the conditions of sale, not pass full unfettered title, and take that away from them. And of course, they hoped that Intel would not take that away from them. But they are sophisticated, too, and when they see this warning letter, it says, proceed at your own risk. It's not, you are not authorized. It's proceed at your own risk. And they know what that means. And so the customers of the computer manufacturers that are here as defendants today knew that as well. I assume that. I know the computer manufacturers knew that, but I'm not privy to the actual conversations between them and the Gateways and Dells of the world. So moving on, I'll mention on the 645 patent, there was criticism of the court below, who made a statement that the RAS address strobe and the CAS, the column address strobe, were not. Are you on the cross-appeal now? I'm not sure I'm listening. No, this is justifying the court's finding of no infringement on the 645 patent, Your Honor. And indeed, I think I should be here. Well, I think that was argued by Mr. Tarantos. I'm not sure that it's in order for you to be responding orally to an argument not made orally. Of course, in the brief, he makes all his arguments and you make all your responses, and we have that, and that's fine. But it seems like for the purpose of the argument here, you should be limited to responding to the arguments he chose to orally present. On more mature reflection, Your Honor, I think you're absolutely right. So let me address one more exhaustion issue that's presented by this case, and that is once you have a first sale exhaustion of an article, if the seller of that article also has a patent on the method for using the article and the only method for using the article so that the article has no use without using the patented method by the seller of that article, we believe that should be exhausted as well. That's easy. But in this case, you have just the opposite situation. You have a disclaimer of any right to pass on to the purchaser of the unpatented component that Intel is selling any rights of the patentee. So when you have so explicit a statement, unless you can draw on the Constitution for whatever reason, it's hard to say that that same inference is required. I would think that it should be the contrary inference. Well, Your Honor, it is in the string of what we understand to be exhaustion which springs from the Constitution, which has to be distinguished from implied license. Clearly implied license is an equitable concept. It springs from the circumstances surrounding the sale. But what Intel is selling is not patented either. It's used, I gather, with one exception. It's what the customers do with it that comes within the patents that are here at issue. It is what our customers do with it, but the combination, for example... ...implied license under someone else's patent. I think there is a right to use under exhaustion, which we would respect... But there's no patent to be exhausted. If it's not patented in the first place, what patent right is being exhausted by Intel's sale? There must be a patent right exhausted. I agree, Your Honor. Here, a patent right was exhausted on the patents on the combination of the Intel product with memory, which would have to do. That exhaustion occurred based on Univis, based on the Cyrix cases. Is that your basis for exhaustion, the Univis resale price maintenance case? Well, Univis... There's no issue here with price maintenance. Yeah. Univis found exhaustion when the lens blank was... That's why you can't control the price. ...for completing lens blank. And therefore, there was not an effective license agreement that would have protected price maintenance. It's an antitrust violation. It was an antitrust violation. There's no issue here of antitrust violation, you say? No, but the principles of exhaustion set forth in Univis, starting with Mitchell and Adams, are all the same. Unrestricted sale of the product exhausts the right of the patent owner to control that product under the Constitution because of the limited bundle of rights given to an inventor under the Constitution. Now, in the Method case, we had an exhausted product. And what happens now is that exhausted product has but one use. The use patented by the same owner of the exhausted patent. And that would make that product or that combination of the Intel microprocessor and memory no more than a paperweight if it couldn't be operated. You couldn't operate the microprocessor. So exhaustion, not for every Method patent, but only where they are necessary for the operation of an exhausted apparatus. I'm trying to find what kind of constructive first sale one can say exists of the patented product. There is none. I can point you to, Your Honor, and I'm out of time, but I can point you to the Hewlett-Packard repeal type case, which involved both patents on products and patents on Methods that those products were sold. The patented product was sold, and that exhausted the right. Here, the patented product isn't sold until your customers make it, your clients make it. The key sale here is the sale of the Intel part. That exhaust, not only that part. The unpatented part. As long as it has essential features, according to the universe, has essential features of the invention and has no non-infringing use, that sale, that exhaustion on that sale, carries with it the right to complete the combination. And that's universe. Of course, Cyrix is a district court case. You're repeating now, Mr. Anthony, and you're way over your time. So I think we'll conclude it. Thank you, sir. I'm ruling that the cross-appeal is submitted by both parties on the brief. Mr. Toronto, you have about a minute and 13 seconds of rebuttal on the issues on the appeal only. Thank you. Two points on exhaustion. A sufficient ground for reversing the district court's finding of exhaustion is precisely what Judge Newman and you were talking about. There is no sale of a patented article. But it's the only known use of the unpatented component. That would trigger an implied license analysis, and that has two requirements. Well, on either theory, the trial judge would be sustained. No, no, because the district court said as to implied license, which only one of the defendants even presses, only Quanta, the other expressly abandoned this, because in the face of the letter, you cannot find anything other than a disclaimer of permission. And even as to a component that has no non-infringing use, implied license is defeated if there's a disclaimer of permission. I'll quote the relevant part of the notice letter that the district court quoted in the public opinion. Intel said to the defendants, while this patent license, the one from LGE that restricts certain kinds of uses, granted to Intel, covers Intel's products, it does not extend expressly or by implication to any product that you may make by combining an Intel product with any non-Intel product. That, even if you tried to overcome the absence of a sale of a patented article, even if you went to valid condition, that would be enough, because the 154 exclusivity right is being said by LGE through Intel to say, we give you this much, we don't give you that, and there's nothing in patent law that takes away the patentee's choice to say, we give you only this much and not this much. It doesn't have to be, although it is, an enforceable contractual restriction. That, I think, is the fundamental mistake the district court made. Time has expired. We thank both counsel. The case is taken under submission.